# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JASON ANTHONY MORA,**

    **Plaintiff,**

 **v.**                                                                                                    **No. 21-cv-0189 SMV**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Opposed Motion to Reverse and/or Remand [Doc. 21], filed on October 8, 2021. The Commissioner responded on January 6, 2022. [Doc. 25]. Plaintiff replied on January 20, 2022. [Doc. 26]. The parties have consented to my entering final judgment in this case. [Doc. 18]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds legal error and will grant the Motion.

The Court is not persuaded that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's self-reported symptoms. Although Plaintiff's challenges to certain of the ALJ's record citations are well-taken (i.e., they do not support the ALJ's findings of "benign presentations" and "effective treatment"), other citations do support the ALJ's findings. Nevertheless, remand is warranted. The ALJ erred in determining that 21,600 jobs in the national economy was "significant" with no supporting analysis whatsoever. This error prejudiced Plaintiff because there

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

appears to be uncontradicted evidence weighing against a finding of significance, namely that Plaintiff can neither drive nor use public transportation.  Accordingly, the Motion will be granted, and the case will be remanded for further proceedings.  *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on January 20, 2018. Tr. 88. He applied for supplemental security income on August 8, 2019. *Id.* In both applications, he alleged a disability-onset date of January 20, 2017. *Id.* His claims were denied initially and on reconsideration. *Id.* ALJ Jeffrey N. Holappa held a hearing on July 21, 2020. *Id.* "[D]ue to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic," the hearing was conducted by telephone. Tr. 88, 9, 10. Plaintiff appeared telephonically with his attorney. Tr. 88, 9, 10. The ALJ heard testimony from Plaintiff and vocational expert ("VE") Thomas Grenier. Tr. 88, 38–43.

The ALJ issued his unfavorable decision on August 20, 2020. Tr. 100. He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. Tr. 90. At step one, he found that Plaintiff had not engaged in substantial gainful activity since January 20, 2017, his alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus/ diabetic polyneuropathy, right great toe diabetic ulcer, left lower extremity resting tremor, gastroparesis, anxiety disorder not otherwise specified/ social anxiety disorder, major depression recurrent/ unspecified depressive disorder, and post-traumatic stress disorder. *Id.* The ALJ found the following impairments to be

non-severe: hypertension, hypertriglyceridemia, hypercholesterolemia, gastroesophageal reflux disease, remote pancreatitis, sinusitis, and bilateral cataracts/ myopia. Tr. 91.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 91–93. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 93–98. The ALJ found that Plaintiff could perform a limited range of sedentary, semi-skilled work. *Id.* Specifically, he found that Plaintiff:

> has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a). Specifically, [Plaintiff] retains the functional capacity to perform sedentary work, lift/carry up to 10/10 pounds occasionally/frequently, but only sit/stand-walk up to 6/2 hours in an 8-hour day, push/pull as much as lift/carry, but is limited to no foot controls with the left lower extremity; occasional climbing of ramps and stairs, never climbing ladders or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. [Plaintiff] is also limited to frequent bilateral handling, fingering, and feeling. [Plaintiff] is further limited to no exposure to unprotected heights, moving mechanical parts, or operation of a commercial motor vehicle. Finally, [Plaintiff] is limited to understanding, remembering, and carrying out simple and detailed, but not complex tasks further defined as semi-skilled work (SVP 4 or below), making commensurate semiskilled work-related decisions, dealing with changes in a semi-skilled work setting, maintaining concentration, persistence, and pace for at least two hour intervals, occasional interactions with supervisors and co-workers, but less than occasional interactions (but more than none) with the general public.

Tr. 93.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as an animal caretaker or security guard. Tr. 98. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 99. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under

a disability as defined by the Social Security Act and denied Plaintiff's claims. Tr. 100. The Appeals Council denied review on January 13, 2021. Tr. 105–09. Plaintiff timely filed the instant action on March 2, 2021. [Doc. 1].

## Discussion

Although Plaintiff's challenges to certain of the ALJ's record citations are well-taken (i.e., they do not support the ALJ's findings of "benign presentations" and "effective treatment"), other citations do support the ALJ's findings. Thus, Plaintiff fails to show error in the ALJ's evaluation of his self-reported symptoms. However, remand is warranted for legal error at step five. The ALJ erred in determining that 21,600 jobs in the national economy was "significant" without providing any supporting analysis whatsoever. This legal error prejudiced Plaintiff because there is seemingly uncontradicted evidence that he cannot drive or use public transportation, and these circumstances would appear to weigh against the finding of significance.

<u>Plaintiff fails to show error in the ALJ's evaluation of his self-reported symptoms.</u>

The ALJ found that Plaintiff's self-reported symptoms were not entirely consistent with the evidence of record, and thus, he did not fully credit them. Tr. 94. The ALJ spent several paragraphs discussing both the evidence favorable to Plaintiff (i.e., consistent with his self-reports) and the evidence unfavorable to Plaintiff (i.e., of "benign presentations [and] effective treatment"). Tr. 95. The relevant part of the ALJ's decision, which the Court refers to by "first paragraph," "second paragraph," and "third paragraph," is as follows:

> An abnormal brain MRI with increased white matter flair is noted; however, the claimant did not follow-up with neurological treatment [Tr. 448, 452, 474, 518–19]. In addition, diagnostic imaging showed normal labs in January 2020 [Tr. 518]. Treatment included medication, which alleviated some of the claimant's symptoms when taken in compliance [Tr. 462].

> In fact, physical examinations during the relevant period generally showed benign findings including normal range of motion, normal DP/PT pulses, normal strength, no swelling, no deformity, normal coordination, no erythema, no edema, 5/5 bilateral upper and lower muscle strength, and better-controlled diabetes evidenced by a reduction in A1c (from 13 to 8) [Tr. 386, 405, 409–11, 520]. In addition, physical examinations showed normal tandem gait, normal finger taps, no tremor, no muscle atrophy, no muscle rigidity, and normal range of motion, suggesting that treatment was at least somewhat effective [Tr. 517, 520].
>
> At times, diminished sensation, diminished range of motion with simulated weight bearing, left lower extremity with resting tremor, reported diarrhea vomiting, reported abdominal pain, and slow gait were noted on some examinations, but these abnormal clinical presentations were offset by generally benign presentations noted elsewhere in the record and by evidence of effective treatment [Tr. 409, 451, 454, 518].

Tr. 94–95 (alterations only to convert the citations in the ALJ's decision to the pagination utilized in this Court).

Plaintiff's challenge is to the third paragraph. [Doc. 21] at 22–25. Specifically, Plaintiff challenges the ALJ's finding that evidence favorable to him was "offset by generally benign presentations noted elsewhere in the record and by evidence of effective treatment." Tr. 95 (citing Tr. 409, 451, 454, 518). Plaintiff methodically examines each of the ALJ's citations, arguing that none shows benign presentation or effective treatment. [Doc. 21] at 22–25 (discussing Tr. 409, 451–53, 454–56, 516–19). Plaintiff argues that because the records cited do not support the ALJ's findings (of "benign presentations [or] effective treatment"), they lack "meaningful analysis" and are "unreviewable." *Id.* at 22. As Plaintiff sees it, the ALJ must have either failed to consider the evidence favorable to him or cherry picked only the unfavorable evidence. *Id.* at 25. He urges remand for the ALJ to consider all the evidence.

The Court is not persuaded for two reasons. First, Plaintiff argues that ALJ failed to *consider* all the evidence or the evidence favorable to him. [Doc. 21] at 25 ("the ALJ failed to consider all the evidence," [Doc. 25] at 3 (arguing that the ALJ considered only the evidence unfavorable to Plaintiff), 4 (same), 5 (requesting remand for the ALJ to "meaningfully consider" the evidence favorable to Plaintiff). The argument is without merit. The ALJ said he considered all the evidence. Tr. 89 ("After careful consideration of all the evidence"), 90 ("After careful consideration of the entire record"), 93 (same), 94 ("After careful consideration of the evidence"). The Court takes him at his word. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (internal quotation marks and brackets omitted). Plaintiff fails to show that that the ALJ failed to consider all the evidence.

Second—and more to Plaintiff's point—the ALJ's findings (of "benign presentations" and "effective treatment") are supported by the record. Plaintiff's challenges to the citations in the third paragraph are well-taken. Those records do not support the disputed finings. However, the citations in the second paragraph do support the ALJ's findings. Tr. 95. The ALJ explained in the second paragraph that physical examinations during the relevant time period often showed "benign findings," including normal range of motion, normal pulses, full (5/5) muscle strength, normal gait, no swelling, normal coordination, and better-controlled diabetes. Tr. 95 (citing Tr. 386, 405, 409–11, 520). He further explained that Plaintiff's "physical examinations showed normal tandem gait, normal finger taps, no tremor, no muscle atrophy, no muscle rigidity, and normal range of motion, suggesting that treatment was at least somewhat effective." *Id.* (citing Tr. 517, 520).

Critically, Plaintiff does not challenge the citations in the second paragraph. *See* [Doc. 21] at 22–25. Remand is not warranted on the ALJ's evaluation of Plaintiff's self-reported symptoms.

<u>The Court is not satisfied that the ALJ applied the correct legal standard<br>
in determining that the number of step-five jobs was "significant,"<br>
and this error prejudiced Plaintiff.</u>

The ALJ failed to provide any analysis on how he determined 21,600 jobs nationally to be a significant number. Tr. 99. Under the circumstances of this case, the Court cannot say that the ALJ applied the correct legal standard in making this determination. Moreover, the record includes evidence that seems to weigh against finding 21,600 to be significant. Without any analysis to support the ALJ's finding of significance, remand is necessary.

"This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "[The] reluctance stems from [the circuit court's] belief that each case should be evaluated on its individual merits." *Id.* Several factors go into the proper evaluation of the issue:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). The Tenth Circuit has also emphasized that "the decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

In *Trimiar*, the seminal case on this issue, the Tenth Circuit affirmed the ALJ's finding of significance (even though the number of jobs was low) because the ALJ provided an analysis of his reasoning. In that case, the VE had testified that there were 650–900 jobs regionally. *Id.*

9

(No national numbers were provided.  *See id.*)  The ALJ considered several factors relevant to evaluating whether those jobs numbers were numerically significant.  *Id.*

> First, the ALJ considered the combination of impairments possessed by the Appellant and acknowledged the "limited function of the right hand."  "The medical evidence establishes that the claimant is impaired as a result of radial nerve pulsey [sic] of the right arm"; nevertheless, "the claimant retains the residual function capacity to engage in work of a light nature not requiring use of his right upper extremity."  Further, we cannot question the reliability of the vocational expert's testimony.  The ALJ gave due consideration to the education and experience of the expert and probed regarding the expert's conclusion that Appellant could perform work that exists in significant numbers.
> 
> Also, the ALJ considered the Appellant's capacity to travel to the assigned work, by receiving testimony regarding the Appellant's capacity to drive long distances.  In response to a question regarding the claimant's ability to drive distances over 150 miles, the expert noted: "I don't think the fatigue of the, the [sic] arm would be a terribly big problem.  I think he'd get the use of that.  A lot of this driving-- You know, if you're on the highway, for example, there's not much that demand placed on it."  The record, therefore, reflects neither physical nor practical limits on the Appellant's ability to travel long distances.  Additionally, the transcript indicates questioning regarding the isolated nature of the work.  To this end, the ALJ heard testimony regarding the number of jobs, the percentage of jobs, and the location of jobs that are within the Appellant's capacity.  Finally, we are satisfied that the ALJ properly considered the type and the availability of work.  Testimony was elicited regarding what jobs the Appellant could perform; whether his skills were transferable to these jobs; whether and to what extent he would require training for these jobs; and whether other people with similar physical limitations performed these jobs.

*Id.* at 1330–32 (alterations in original).  Ultimately, the Tenth Circuit found that it "need[ed] not strain at the numbers [because] the record indicate[d] that **the ALJ weighed the relevant factors** in reaching his conclusion."  *Id.* at 1332 (emphasis added).  The ALJ's finding that the regional numbers were "significant," therefore, reflected an application of the correct legal standard and was supported by substantial evidence.  *Id.*

In the only two other cases published since *Trimiar* on the issue of "significance," it is evident that where the jobs numbers are low, a finding of "significant" must be supported by some

type of analysis. For example, in *Allen v. Barnhart*, the Tenth Circuit reversed and remanded where there was no analysis on the issue of significance. The ALJ had incorrectly relied on the medical-vocational guidelines ("grids"), which were not controlling because the plaintiff had several non-exertional limitations, and where two of the three jobs provided by the VE exceeded the limits of the plaintiff's RFC. 357 F.3d 1140, 1143 (10th Cir. 2004). The Commissioner urged the court to affirm anyway because, irrespective of the errors, the VE had testified that the plaintiff could perform the duties of surveillance monitor, of which there were 100 jobs statewide. The court declined. *Id.* at 1144. The number of jobs was merely 100. The ALJ had not affirmatively determined that 100 jobs statewide was a "significant" number. And—as is relevant here—the ALJ had "not give[n] explicit consideration to the factors this court has recognized should guide the ALJ's commonsense judgment," such as the factors in *Trimiar*. *Allen*, 357 F.3d at 1144. The reversal was not solely for an ALJ to make a finding on the question of significance. Rather, the remand was for an ALJ to *explicitly consider* the factors. *Id.*

Similarly in *Raymond*, the Tenth Circuit repeated that where the step-five jobs numbers are low, a finding of numerical significance must be supported by some type of analysis, as in *Trimiar*. 621 F.3d at 1274 n.2. In *Raymond*, the court was not persuaded by the plaintiff's challenge to the jobs numbers at step five. 621 F.3d at 1274. The numbers at issue were 1.34 million jobs nationally and 385 regionally. *Id.* Critically, the plaintiff had not challenged the national numbers; he had challenged only the regional numbers. The court declined to remand because it was enough for the ALJ to rely on the national numbers, which the plaintiff never challenged. *Id.* Succinctly, the court clarified, "*Trimiar* does not hold that only regional jobs are relevant or that a court must

engage in a factoral analysis when the number of jobs relevant available is, as here (1.34 million), much larger [than in *Trimiar*]." *Id.* at n.2.

Here, the number of jobs at issue—21,600 nationwide—is low and cannot per se support a finding of significance. If the number were much higher, as in *Raymond* (1.34 million) for example, the number alone could suffice. But here, because the number is low, some analysis is necessary to show application of the correct legal standard and to support a finding of "significant." But there is no analysis. *See* Tr. 99. There is nothing beyond a conclusion that the number is significant. *Id.* There is no discussion or explanation of how the ALJ determined that the number was "significant." *Id.*

Moreover, this error prejudiced Plaintiff. The record includes seemingly uncontradicted evidence that appears to weigh against finding 21,600 as significant. For example, *Timiar* indicates that "the distance claimant is capable of traveling to engage in the assigned work" can be relevant to issue of significance. 966 F.2d at 1330. Here, Plaintiff argues that he cannot travel independently and cannot drive. [Doc. 21] at 21 (citing Tr. 14 (Plaintiff's hearing testimony)). The ALJ's decision twice noted Plaintiff's testimony that he could not drive. Tr. 92, 94. Further, the ALJ adopted the opinion of Dr. Owen that Plaintiff had a moderate-to-marked limitation in the ability to use public transportation. Tr. 97. The state of the record on Plaintiff's ability to travel to engage in work seems to weigh against finding as number as low as 21,600 to be significant. Further, Defendant does not dispute this point.[4] *Compare* [Doc. 21] at 21 (Plaintiff's arguments),

---

[4] Plaintiff makes other similar arguments that Defendant does not dispute. *Compare* [Doc. 21] at 21 (Plaintiff's arguments), *with* [Doc. 25] at 9–10 (Defendant's response). For example, *Timiar* indicates that the claimant's level of disability can be relevant to issue of significance. 966 F.2d at 1330. Here, Plaintiff argues that his level of disability (limited range of sedentary work, Tr. 39–42) weighs against a finding of significance. *See* [Doc. 21] at 21. Also,

*with* [Doc. 25] at 9–10 (Defendant's response).  The ALJ's legal error in failing to provide any analysis on the issue of significance prejudiced Plaintiff, because there is evidence that appears to weigh in his favor.

Defendant makes two arguments, neither of which is persuasive.  First, Defendant implies that because only national numbers are relevant to this case and not regional numbers, *Trimiar* does not apply.  [Doc. 25] at 9 (citing *Garcia v. Comm'r, SSA*, 817 F. App'x 640 (10th Cir. June 24, 2020) and citing *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009)).  To the extent that Defendant argues that national numbers are beyond review, the Court disagrees.[5]

In *Raymond*, the Tenth Circuit explained that *Trimiar* placed no special significance on regional numbers to the exclusion of national numbers.  621 F.3d 1274 n.2.  It was mere happenstance that in *Trimiar* only regional numbers were provided by the VE and relied on by the ALJ.  *Raymond* does not support Defendant's position that *Trimiar* is inapplicable to cases involving only national numbers.  Such cases are subject to *Trimiar*, and substantial evidence must support an ALJ's finding that national numbers are "significant."  Indeed, in one of its most recent opinions on the issue of "significance," the Tenth Circuit applied *Trimiar* to a case involving only national numbers.  *Kimes v. Comm'r*, 2020 U.S. App. LEXIS 21193, at *10 (10th Cir. July 6, 2020).  *Trimiar* applies to cases like this one where only national numbers are at issue.

---

Plaintiff argues that his gastric symptoms, such as "sulfur burps," would be too offensive to be accepted in a workplace setting.  *Id.*

[5] Certainly, where only national numbers are at issue, not every factor from *Trimiar* will necessarily be relevant, such as the distance the claimant is capable of traveling.  *See Trimiar*, 966 F.2d at 1330.  But other factors will be relevant to national numbers, such as the reliability of the vocational expert's testimony or the isolated nature of the jobs.  *See id.*  Besides, the list of factors is *Trimiar* is not exclusive.  *See id.* (listing the factors and ending with list with "and so on.").

Second, Defendant challenges the cases cited by Plaintiff on the ground that they are harmless-error cases rather than substantial-evidence cases. [Doc. 25] at 10. The Court appreciates the analytical distinction between the harmless-error cases and this, a substantial-evidence case, but it is not helpful to Defendant. True, in the harmless-error cases, there has been no administrative finding that the job numbers at issue are "significant." Thus, in the harmless-error context, the reviewing court hesitates to decide in the first instance whether the job numbers at issue are, affirmatively, either significant or not significant. Whereas in a substantial-evidence case, the reviewing court must decide whether the correct legal standards were applied, and if so, whether the ALJ's finding of "significant" is supported by substantial evidence. Under the circumstances here, however, that distinction only supports Plaintiff's position. That distinction highlights that the ALJ's finding of "significant" (when the number is low) must be based on something more than a mere number. If nothing more than evidence of a number were required, there would be no need to remand in the harmless-error context. The circuit court would give us a bright-line rule. The purpose of the remand in the harmless-error cases is not for the ALJ to mechanically say the word "significant." The purpose for the remand is for the ALJ to weigh the "many fact-specific considerations requiring individualized evaluation" in determining numerical significance. *Allen*, 357 F.3d at 1144. Here, there is no analysis of any kind. There is nothing showing that that the ALJ weighed any factor. This Court cannot tell how the ALJ determined that 21,600 was significant. Under these circumstances, the Court can say

neither that the ALJ applied the correct legal standard nor that substantial evidence supports the ALJ's finding of "significant."[6] The Motion will be granted.

## Conclusion

Plaintiff fails to show that the ALJ erred in evaluating his self-reported symptoms. Although the record citations challenged by Plaintiff do not support the ALJ's findings of "benign presentations" and "effective treatment," other citations do support the ALJ's findings. Nevertheless, remand is warranted. The ALJ erred in determining that 21,600 jobs in the national economy was "significant" with no supporting analysis whatsoever.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Opposed Motion to Reverse and/or Remand [Doc. 21] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

[6] Defendant cites to *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) for the proposition that it "suggest[s] that 11,000 jobs in the national economy was substantial evidence to support a determination of nondisability." [Doc. 25] at 10. In fact, the question of whether the jobs met the numerical-significance requirement was not at issue in *Rogers*. There is no indication that it was argued. The Tenth Circuit's opinion did not cite to *Trimiar* or *Allen*. (*Raymond* would not be decided for another ten months.) And the court discussed none of the principles related to whether a number qualifies as "significant." Additionally, *Rogers* is not published, does not bind the decision in this case, and cannot carry more weight than the published authorities.